**\*NOT FOR PUBLICATION\***

## UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

BROOKS M. WITZKE,

               Plaintiff,

    v.

COLLINS J. SEITZ, JR., JAMES T.
VAUGHN, JR., TAMIKA R.
MONTGOMERY-REEVES, GARY F.
TRAYNOR, KAREN L. VALIHURA,
RANDOLPH K. HERNDON, UNITED
STATES DISTRICT COURT FOR THE
DISTRICT OF DELAWARE, COLM F.
CONNOLLY,

               Defendants.

Civ. Action No. 21-01637 (FLW)

**OPINION**

**WOLFSON, Chief Judge (D.N.J.):**[1]

    This matter comes before the Court on two motions to dismiss the Second Amended Complaint of *pro se* Plaintiff Brooks M. Witzke ("Plaintiff"), which raises constitutional challenges to certain bar admission requirements of the State of Delaware, on the bases that Plaintiff lacks standing pursuant to Fed. R. Civ. P. 12(b)(1) and that Plaintiff fails to state a claim under Fed. R. Civ. P. 12(b)(6). The two motions are brought separately by the state and federal defendants named in this action. The "State Defendants" include: Chief Justice Collins J. Seitz, Jr. of the Delaware Supreme Court; Justices Karen L. Valihura, James T. Vaughn, Jr., Gary F. Traynor, and Tamika R.

---

[1] Pursuant to 28 U.S.C. § 292(b), and finding it in the public interest to do so, Chief Judge Michael A. Chagares of the United States Court of Appeals for the Third Circuit designated and assigned the matter to this Court "for such a period as is necessary for the disposition of the above-entitled matter and all related cases." *See* ECF No. 31.

Montgomery-Reeves of the Delaware Supreme Court; and Randolph K. Herndon, a member of the Delaware Board of Bar Examiners (the "Board" or "DBBE") and Chair of the panel that reviewed Plaintiff's bar application. The "Federal Defendants" include the United States District Court for the District of Delaware and Chief Judge Colm F. Connolly of the District of Delaware (together with State Defendants, "Defendants"). Plaintiff opposes the motions. For the reasons set forth herein, Defendants' motions to dismiss are **GRANTED**; Plaintiff's claims are dismissed.

## I.      FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff, a law school graduate, passed the July 2019 Delaware Bar exam and satisfied certain other bar admission requirements set forth in the rules promulgated by the Delaware Supreme Court. ECF No. 43, Second Amended Complaint ("SAC") ¶¶ 1, 68–72. However, Plaintiff's application to the Delaware Bar was denied in the first instance for failure to demonstrate the requisite moral character for admission. *Id.* ¶ 109. In response to the initial denial, Plaintiff requested a show cause hearing, which was held on June 7, 2021. *Id.* ¶¶ 109, 126. On April 4, 2022, the DBBE issued a final decision on Plaintiff's application, denying Plaintiff admission to the Delaware Bar "on grounds of moral character." *Id.* ¶¶ 102, 140. Plaintiff subsequently appealed the decision to the Delaware Supreme Court, but he has since voluntarily dismissed that appeal. *See* ECF No. 50-1, Ex. A. In addition, while review of Plaintiff's bar application was still pending, Plaintiff filed this action seeking declaratory and injunctive relief with respect to several admission prerequisites of the Delaware Bar and the District of Delaware, which Plaintiff asserts are violative of the U.S. Constitution. SAC ¶¶ 172–244.

### A.      Delaware Bar Admission Requirements

In addition to passing the Delaware Bar exam, there are various other prerequisites for admission to the Delaware Bar that applicants must satisfy. Relevant here, such admission requirements include: (i) a five-month legal clerkship (the "Clerkship Requirement"); (ii) completion

of a checklist of legal tasks and activities related to the practice of law in Delaware (the "Checklist Requirement"); and (iii) the endorsement of a "Preceptor" (the "Preceptor Requirement").  SAC ¶¶ 22–26.

Delaware Supreme Court Rule 52(a)(8) governs the Clerkship Requirement and provides that an applicant must serve "a clerkship in the State of Delaware under the direct and constant supervision of a member of the Bar of this State . . . aggregating substantially full-time service for at least 5 months' duration, which period need not be continuous but which may not begin prior to matriculation at a law school." *Id.* ¶ 24 (quoting Del. Sup. Ct. R. 52(a)(8)).  The rule further clarifies that "5 months is 21 forty-hour work weeks" and that the clerkship may be served in a private law office, as a clerk for a state or federal judge in Delaware, or in one of the state's various public office legal departments.  *Id.*

Delaware Supreme Court Rule 52(a)(9) governs the Checklist Requirement. The Rule states that an applicant must "perform[] such legal tasks and activities related to the practice of law in Delaware as the Board shall direct and furnish in the form of a checklist to all applicants for admission, with the completion of such tasks and activities to be certified by both the applicant and the applicant's Preceptor."  *Id.* ¶ 25 (quoting Del. Sup. Ct. R. 52(a)(9)).  The 2019 checklist enumerated 26 tasks, including, among other things, "Attend one civil trial in a Justice of the Peace Court," "Attend one criminal trial in the Court of Common Pleas," "Attend one session of arraignments in Superior Court," "Attend a trial or complete hearing in the Court of Chancery," "Review papers related to an appeal of a final judgment to the Delaware Supreme Court," "Attend an interview of a client, witness or litigant," and "Attend one contested deposition."  *See id.*, Ex. D.

Finally, Delaware Supreme Court Rule 52(a)(2), which governs the Preceptor Requirement, states that an applicant must be "vouched for by a member of the Bar of this State who shall have been a member of the Bar of this Sate for at least 10 years."  *Id.* ¶ 26 (quoting Del. Sup. Ct. R.

52(a)(2)).  The Rules of the Board of Bar Examiners (the "Board Rules" or "Board Rs.") set forth additional regulations relating to the Preceptor Requirement, including that the Preceptor must mentor the applicant and "shall confer on a frequent and regular basis with the applicant" so as "to confirm the applicant's compliance with the clerkship and checklist of legal activities requirements." *Id.* (quoting Board R. 10).  The Board Rules ultimately require that the Preceptor review the applicant's admission application for accuracy and completeness and certify the applicant's compliance with the Clerkship and Checklist Requirements.  *Id.*

Relatedly, the United States District Court for the District of Delaware has its own admission process, which largely depends on an applicant's satisfaction of the requirements set forth by its forum state, the State of Delaware.  *Id.* ¶ 149.  In this respect, District Court Local Rule 83.5 instructs that "Any attorney admitted to practice by the Supreme Court the State of Delaware may be admitted to the Bar of this Court on a motion of member of the Bar of this Court made in open court."  *Id.* (quoting D. Del. LR 83.5(b)).

### B.    Plaintiff Is Denied Admission to the Delaware Bar

Plaintiff graduated from Concordia University School of Law in Boise, Idaho in May 2019. SAC ¶ 69.  After graduation, Plaintiff relocated to Delaware and passed the July 2019 Delaware Bar Exam. *Id.* ¶ 71.  In September 2019, in order to complete the Clerkship and Checklist Requirements, Plaintiff secured a position at Gosner and Gosner Law Firm, where Ashley Bickel, Esq., served as his initial Preceptor and clerkship supervisor. *Id.* ¶ 72.  Plaintiff states that but for these requirements he "would have never relocated to Delaware" from his home in Idaho.  *Id.* ¶¶ 1, 71.

In November 2019, Plaintiff was informed by the two investigators assigned to Plaintiff's bar application, Stephanie Tsantes, Esq. and Robert H. Robinson, Esq., that his application was incomplete and needed to be supplemented before a character and fitness interview could take place. *Id.* ¶ 77.  On December 5, 2019, Plaintiff notified Tsantes and Robison that he had supplemented his

application and cured any deficiencies. *Id.* ¶ 79.  At Plaintiff's character and fitness interview, on February 12, 2020, Plaintiff alleges that Tsantes and Robinson "first mentioned that they learned from the Board that Plaintiff did not intend to remain in Delaware to serve one of Delaware's 'home-grown' corporate law firms but that he intended on returning to Idaho." *Id.* ¶ 85. Plaintiff further alleges that at the interview Tsantes "repeatedly asked Plaintiff to withdraw his application to the Delaware Bar or stated that she would intentionally sabotage Plaintiff's admission to the Bar." *Id.* Plaintiff avers that Tsantes' purported threats and subsequent actions were in service of the Defendants' "express instructions" to prevent Plaintiff's admission to the Delaware Bar.[2] *Id.* ¶¶ 74–77, 85.

According to Plaintiff, on March 2, 2020, Tsantes and Robsinon called his Preceptor and arranged for a "secret meeting" on March 4, 2020, at which the "express objective was to convince Bickel to withdraw as Plaintiff's Preceptor in order to sabotage Plaintiff becoming admitted to the Bar." *Id.* ¶¶ 86–87.  Plaintiff alleges that Tsantes and Robinson "told Bickel that if she signed the Preceptor's Certificate, that she would be subject to discipline" as an attorney.  *Id.*  On March 5, 2020, Bickel withdrew as Plaintiff's Preceptor.  *Id.* ¶ 88.  Plaintiff further alleges that Bickel stated that the reason she withdrew was because Tsantes and Robinson had "specifically showed her prior precedent where a preceptor was disciplined by the bar for signing a certificate after the DBBE had asked the preceptor to withdraw."  *Id.*  On March 6, 2020, Plaintiff purportedly met with Tsantes and Robinson and the two "confessed" that they "made Bickel aware of Delaware precedent where a

---

[2] Neither Tsantes nor Robinson are named as defendants in this action.  However, Plaintiff repeatedly emphasizes that Tsantes and Robinson acted at the direction of Defendants and in furtherance of the purportedly improper interests of the Delaware Bar.  Although Plaintiff denies that his purpose is to engage in "*ad hominem* attacks," Plaintiff includes various allegations regarding Tsantes, Robinson, and others who are not named as defendants, which are inflammatory, inappropriate, and not relevant to his claims.  *Id.* ¶¶ 56–67.  The Court need not recount such allegations, as they are ultimately immaterial to the causes of action set forth in the Second Amended Complaint and the Court's resolution of the motions to dismiss.

preceptor was sanctioned for signing a certificate" after being asked to withdraw.  *Id.* ¶ 90.  Plaintiff avers that this sort of "sabotage" is "a very common tactic" of the Delaware Bar to prevent "the admission of non-resident attorneys" who will not work for one of Delaware's "corporate law giants." *Id.* ¶ 91.

After Plaintiff's initial Preceptor withdrew, Plaintiff "contacted the Preceptor Bank and asked to be assigned to a new preceptor."  *Id.* ¶ 94.  Plaintiff alleges that he was then intentionally assigned Preceptors that were either unwilling to support Plaintiff after learning his initial Preceptor withdrew or who were not properly registered as Preceptors.  *Id.*  On April 9, 2020, Plaintiff sent a letter to Jennifer Wasson,[3] a former member and Chair of the DBBE, requesting that the Board waive the Preceptor Requirement.  *Id.* ¶ 101.  Wasson subsequently informed Plaintiff that the Board was unable to grant such a request.  *Id.*, Ex. I.  Nevertheless, in the following months, Plaintiff eventually obtained a replacement Preceptor, John Robbert, Esq., who signed Plaintiff's Preceptor Certificate. *Id.* ¶ 104.  Plaintiff submitted the certificate and completed his application to the Delaware Bar on June 2, 2020.  *Id.* ¶ 105.

On August 28, 2020, Plaintiff received notice that he had been denied admission to the Delaware Bar.  *Id.* ¶ 109.  Despite Plaintiff's numerous allegations of "sabotage," Plaintiff makes clear that "[t]he reasons for denial were based on Defendants' reasonable concerns regarding Plaintiff's checkered youth—which is not controverted by Plaintiff for purposes of this litigation." *Id.*  Plaintiff further states that he "has not always been an upstanding citizen" and that he "at no time places into controversy his initial denial for admission to the Delaware Bar on the grounds of moral character," conceding that "there was cause for concern to prompt a moral character

---

[3] Plaintiff initially named Jennifer Wasson as a defendant in this suit.  But Plaintiff dismissed Ms. Wasson from this case in his Second Amended Complaint.  *Id* ¶ 7.  Although the Second Amended Complaint occasionally refers to Ms. Wasson as "Defendant Wasson," the Court construes this as a typographical error as Ms. Wasson is no longer a party to this action.

inquiry." *Id.* ¶ 70.

### C.   Plaintiff Seeks Review of Admission Denial

On September 10, 2020, Plaintiff requested a show cause hearing regarding the denial of his application.  SAC ¶ 110.  Plaintiff was assigned a three-person panel of the DBBE for the hearing (the "Board Panel"), chaired by Defendant Herndon, who Plaintiff alleges was overtly biased and whose role was "not to act as a neutral decisionmaker, but as a tool to rig the outcome" against Plaintiff.  *Id.* ¶ 113.  Plaintiff's hearing was originally scheduled for November 11, 2020.  *Id.* ¶ 115.  However, due to the COVID-19 pandemic, the hearing was rescheduled several times.  *Id.* ¶ 116–20.  Plaintiff vigorously protested the delays, viewing "[a]ll COVID-19 excuses asserted by Defendants" as "untruthful and made in bad faith" to "frustrate Plaintiff's admission process."  *Id.* ¶¶ 120–23.

The show cause hearing was ultimately held on June 7, 2021.  *Id.* ¶ 127.  Following the hearing, on August 27, 2021, the Board submitted its proposed findings of fact and conclusions of law.  *Id.* ¶ 135.  Plaintiff alleges that he submitted his own proposed findings of fact and conclusions of law on September 17, 2021.  *Id.*  Yet, on October 29, 2021, Plaintiff received a letter from Defendant Herndon claiming that the Board Panel had not received Plaintiff's submission and questioning whether Plaintiff intended to pursue his application.  *Id.* ¶ 138, Ex. J.  On November 1, 2021, Plaintiff's attorney verified that Plaintiff's proposed findings of fact and conclusions of law were submitted and received by the Board Panel.  *Id.* ¶ 139.

On April 4, 2022, the Board Panel issued its decision denying Plaintiff admission to the Delaware Bar "on the grounds of moral character."  *Id.* ¶ 140.  Although Plaintiff had initially appealed that decision to the Delaware Supreme Court, Plaintiff abandoned that course of action in the process of pursuing this lawsuit.  *See* ECF No. 50-1, Ex. A.  Plaintiff alleges that he "has immediate plans to re-apply for the Delaware Bar and restart the admissions process all over again."

SAC ¶ 140.  It does not appear that Plaintiff has begun the re-application process at this point.[4]

Prior to the April 4, 2022 decision, Plaintiff also applied for admission to the United States District Court for the District of Delaware on February 3, 2022.  *Id.* ¶ 157.  Plaintiff alleges that he was "denied admission . . . for the sole reason that Plaintiff was not a member of the Delaware Bar." *Id.*

### D.  Procedural History

Plaintiff initiated this action against the State Defendants on November 22, 2021, before the Board Panel's decision denying his bar application.  *See* ECF No. 1.  In addition to constitutional challenges regarding certain admission requirements of the Delaware Bar, Plaintiff also sought an injunction requiring the Board Panel to issue a final decision, contending that the delays violated his due process rights.  *See id.*  Plaintiff amended his Complaint for the first time on March 28, 2022, adding claims against the Federal Defendants.  *See* ECF No. 26.

Following the Board Panel's April 4, 2022 decision, on May 14, 2022, Plaintiff filed the Second Amended Complaint, which abandoned his claim with respect to the prompt issuance of a decision on his application, asserting that the Clerkship, Checklist, and Preceptor Requirements violate the Privileges and Immunities Clause (Count II), the Dormant Commerce Clause (Count III), the Equal Protection Clause of the Fourteenth Amendment (Count IV), and the Due Process Clause of the Fourteenth Amendment (Count V) of the U.S. Constitution.  SAC ¶¶ 172–214.  Having "no adequate remedy at law," Plaintiff seeks declaratory and injunctive relief (Count VI), declaring that the identified admission requirements are unconstitutional and providing that "Plaintiff is not required to comply with the terms of these Rules when he makes his second attempt to get into the

---

[4] To the extent Plaintiff alleges that he will reapply to the Delaware Bar in the immediate future, whether he will be required to complete the Clerkship, Checklist, and Preceptor Requirements for a second time, and the legal implications if so, are addressed *infra*.

Bar." *Id.* ¶¶ 215–21.  Additionally, insofar as the corresponding federal court rule, D. Del. LR 83.5(b), adopts the same admission requirements by mandating membership in the Delaware Bar, Plaintiff asserts that that rule violates the Privileges and Immunities Clause (Count VII) and the Dormant Commerce Clause (Count VIII) of the U.S. Constitution. *Id.* ¶¶ 222–44.  Plaintiff does not seek any monetary damages.

On June 10, 2022, the State Defendants filed a motion to dismiss the Second Amended Complaint.  ECF No. 46 ("State Defs. Mot.").  The Federal Defendants filed a motion to dismiss on June 13, 2022.  ECF No. 49 ("Fed. Defs. Mot.").  Plaintiff opposed the motions in separate filings on June 20, 2022 and July 5, 2022, respectively.  ECF No. 50, 54 ("Pl. State Opp." and "Pl. Fed. Opp.").  The State Defendants filed their reply on June 28, 2022.  ECF No. 53 ("State Defs. Reply").  The Federal Defendants filed a reply on July 12, 2022.  ECF No. 55 ("Fed. Defs. Reply").

## II.   DISCUSSION

The State Defendants and the Federal Defendants each move to dismiss Plaintiff's action for lack of standing under Fed. R. Civ. P. 12(b)(1) and for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).  The State Defendants also assert that the *Younger* abstention doctrine requires that this Court abstain from adjudicating Plaintiff's case.  I find that, although *Younger* abstention is not appropriate, Plaintiff lacks standing to bring claims challenging admission requirements that did not serve as grounds for denial of Plaintiff's bar application and do not represent grounds for any potential future denial should Plaintiff re-apply in the near future.

### A.   *Younger* Abstention

As a preliminary matter, the State Defendants argue that this Court must abstain from considering Plaintiff's claims under the *Younger* abstention doctrine because Plaintiff's voluntary dismissal of his appeal to the Delaware Supreme Court does not circumvent the fact that there was an ongoing state proceeding at the time Plaintiff filed this lawsuit, and because Plaintiff had an

adequate opportunity to bring his constitutional claims in the state bar admission proceedings. *See* State Defs. Mot. 7–11; State Defs. Reply 1–3. The State Defendants correctly assert that Plaintiff's strategic dismissal of his appeal to the Delaware Supreme Court does not, in itself, require abstention. However, application of the *Younger* abstention doctrine is unwarranted here because the state proceedings did not provide Plaintiff with an adequate opportunity to raise his constitutional challenges to certain admission requirements of the Delaware Bar, particularly since the challenged requirements were not grounds for the denial of his admission.

The *Younger* abstention doctrine is indicative of "a strong federal policy against federal-court interference with pending state judicial proceedings absent extraordinary circumstances." *Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 431 (1982). Except where the state proceedings "are being undertaken in bad faith or for purposes of harassment" or where "some other extraordinary circumstances exist," federal courts should abstain under *Younger* if "(1) there is a pending state proceeding that is judicial in nature; (2) the proceeding implicates important state interests, and (3) there is an adequate opportunity in the state proceeding for the plaintiff to raise his constitutional challenges." *Wilson v. Dows*, 390 F. App'x 174, 177 & n.5 (3d Cir. 2010). Although *Younger* abstention only applies to certain categories of state proceedings, *see Malhan v. Sec'y U.S. Dep't of State*, 938 F.3d 453, 462 (3d Cir. 2019), the Third Circuit has held that the doctrine extends to "state administrative proceedings in which important state interests are vindicated," including pending state bar admission proceedings. *See Wilson*, 309 F. App'x at 177 (quoting *Ohio Civil Rights Comm'n v. Dayton Christian Sch. Inc.,* 477 U.S. 619, 627 (1986)).

Here, this Court need not stay its hand pursuant to *Younger*. While the first two requirements for *Younger* abstention are satisfied, the third is not. First, the bar admission proceedings before the DBBE constitute judicial proceedings that were ongoing at the time Plaintiff filed his federal complaint. "[P]roceedings may be judicial in nature if, for example, judicial review is available, they

are initiated by a complaint, adjudicative in nature, governed by court rules or rules of procedure, or employ legal burdens of proof." *Altice USA, Inc. v. N.J. Bd. of Pub. Utilities*, 26 F.4th 571, 579 (3d Cir. 2022) (quoting *Kendall v. Russell*, 572 F.3d 126, 131 (3d Cir. 2009) (internal quotations omitted)).  Proceedings before the DBBE are adjudicative, subject to judicial review, and governed by rules promulgated by the Delaware Supreme Court, and thus are judicial in nature.  *See Gonzalez v. Waterfront Comm'n of N.Y. Harbor*, 755 F.3d 176, 183 (3d Cir. 2014) ("Consistent with the Supreme Court's repeated approach when confronted with administrative matters appealable to the state courts, '[w]e will assume . . . that an administrative adjudication and the subsequent state court's review of it count as a 'unitary process' for *Younger* purposes.'") (citation omitted).  Additionally, the proceedings before the DBBE were pending when Plaintiff filed his federal complaint, and "state proceedings are ongoing for *Younger* abstention purposes . . . if the state proceeding was pending at the time [the plaintiff] filed its initial complaint in federal court." *PDX North, Inc. v. Comm'r N.J. Dep't Lab. & Workforce Dev.*, 978 F.3d 871, 885 (3d Cir. 2020) (internal quotations and citation omitted).  Because Plaintiff was litigating both the admission proceedings and this lawsuit in tandem, the state proceedings were "ongoing" under the first *Younger* abstention requirement.  Plaintiff's voluntary dismissal of his appeal to the Delaware Supreme Court, which was pending during this litigation as well, does not disturb this conclusion.

Second, the bar admission proceedings implicate important state interests.  As the Third Circuit has recognized, states have "an extremely important interest in regulating admission to the bar" and in "enforcing professional discipline among the members of the bar." *Wilson*, 390 F. App'x at 178 (citing *Middlesex County Ethics Comm.*, 457 U.S. at 434).

Third, however, there was not adequate opportunity for Plaintiff to raise his constitutional challenges to certain admission prerequisites of the Delaware Bar in the state proceedings, as his admission denial was not based on the prerequisites he now asserts are unconstitutional. "The

Supreme Court has held that this third element is satisfied in the context of a state administrative proceeding when the federal claimant can assert his constitutional claims during state-court judicial review of the administrative determination." *PDX North, Inc.*, 978 F.3d at 885 (quoting *O'Neill v. City of Philadelphia*, 32 F.3d 785, 792 (3d Cir. 1994)).  This Court acknowledges, as the State Defendants point out, that the DBBE and the Delaware Supreme Court can consider, and have considered, federal constitutional challenges in bar admission and disciplinary proceedings.  *See* State Defs. Mot. 9.  But, in each instance cited by the State Defendants, the constitutional challenges raised sought to remedy the perceived adverse actions of the Board.  *See In re Shearin*, 765 A.2d 930 (Del. 2000) (asserting First Amendment defense to disciplinary charges concerning violations of Delaware Lawyers' Rules of Professional Conduct); *In re Cahill*, 677 A.2d 40 (Del. 1996) (asserting due process challenge to Board's denial of request for special accommodation as to the bar exam); *Kosseff v. Bd. of Bar Examiners*, 475 A.2d 349 (Del. 1984) (asserting due process challenge to Board's denial of admission to Delaware Bar based on moral character and fitness review).  That is not the case here.  Rather, Plaintiff seeks constitutional review of admission requirements that he satisfied in the process of applying to the Delaware Bar and were not grounds for the Board's denial of his application.  Plaintiff's unrelated constitutional challenges could not be raised before the Board as it reviewed Plaintiff's application for evidence of the requisite moral character for admission, and therefore, those challenges would not present cause for review by the Delaware Supreme Court on an appeal of the Board's denial.  *See* Del. Sup. Ct. R. 52(e) (stating that "[a]ny person aggrieved by final action of the Board may appeal to the Court for relief if such action affects the substantial rights of the person claimed to be aggrieved" and "[a]ppeals from the Board's action to the Court shall be . . . argued and determined from the record of the matter before the Board of Bar Examiners and not by means of a hearing de novo").  Indeed, Plaintiff frames his constitutional arguments with respect to a future application, not the denial issued by the Board on April 4, 2022.  SAC ¶ 102.

For these reasons, given the unique circumstances of this litigation, and mindful that "[a]bstention should rarely be invoked," *Zahl v. Warhaftig*, 655 F. App'x 66, 70 (3d Cir. 2016), the Court finds that *Younger* abstention is not warranted.  Because the requirements for *Younger* abstention are not satisfied, the parties' arguments with respect to the purported bad faith acts of the State Defendants need not be addressed.

### B.      Standing

Both the State and Federal Defendants assert that Plaintiff lacks standing to bring his claims. *See* State Defs. Mot. 12–13; Fed. Defs. Mot. 6–8.  "A motion to dismiss for want of standing is . . . properly brought pursuant to Rule 12(b)(1), because standing is a jurisdictional matter." *Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007).  In adjudicating a motion to dismiss for lack of standing, "courts apply the standard of reviewing a complaint pursuant to a Rule 12(b)(6) motion to dismiss for failure to state a claim: 'Court[s] must accept as true all material allegations set forth in the complaint, and must construe those facts in favor of the nonmoving party.'" *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012) (quoting *Ballentine*, 486 F.3d at 810).

Article III of the U.S. Constitution provides that [t]he judicial Power of the United States" extends only to "Cases" and "Controversies."  Art. III, §§ 1–2. "[R]ooted in the traditional understanding of a case or controversy," the doctrine of standing "ensure[s] that federal courts do not exceed their authority as it has been traditionally understood" and "limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).  To satisfy Article III's standing requirements, the Supreme Court has established that a plaintiff must show "(1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely

speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 180–81 (2000) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)). "The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements." *Spokeo, Inc.*, 578 U.S. at 338 (citing *FW/PBS, Inc. v. Dallas,* 493 U.S. 215, 231 (1990)).

Here, the State Defendants argue that Plaintiff lacks standing to challenge the Clerkship, Checklist, and Preceptor Requirements because Plaintiff successfully completed each requirement in applying for the Delaware Bar and none of the challenged requirements served as grounds for denial of Plaintiff's application. *See* State Defs. Mot. 12–13. The Federal Defendants assert that Plaintiff lacks standing because Plaintiff's challenge to D. Del. LR 83.5(b), which governs admission to practice in the District of Delaware, is derivative and duplicative of his challenge to the Supreme Court Rules governing the Clerkship, Checklist, and Preceptor Requirements and any harm suffered by Plaintiff is solely attributable to Delaware's rules. *See* Fed. Defs. Mot. 7.

### 1. *Claims Against the State Defendants*

Plaintiff's claims against the State Defendants challenge the constitutionality of Delaware Supreme Court Rules 52(a)(2), the Preceptor Requirement, 52(a)(8), the Clerkship Requirement, and 52(a)(9), the Checklist Requirement. SAC ¶¶ 24–26. Plaintiff also challenges Del. BR 10, which sets forth the qualifications and duties of a Preceptor. *Id.* ¶ 26. Worth repeating, to establish standing to bring constitutional challenges to these rules, Plaintiff must demonstrate that the injury he suffered is "concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013). Plaintiff's injuries are not in dispute. However, the injuries Plaintiff identifies—denial of admission to the Delaware Bar and the extended duration of the proceedings leading to the denial—are neither "fairly traceable" to the challenged rules nor would they be "redressable by a favorable ruling" of

14

this Court.  Plaintiff's application for admission to the Delaware Bar was denied "on the grounds of moral character," not the challenged rules.  SAC ¶ 140.  Moreover, even if Plaintiff plans to re-apply to the Delaware Bar, Plaintiff's allegations do not indicate that the challenged rules, with which Plaintiff has demonstrated an ability to comply, are likely to serve as the ultimate barrier to Plaintiff's admission, as opposed to moral character deficiencies.

"The second element of Article III standing is causation," which "requires the alleged injury to be fairly traceable to the challenged action of the defendant" and is "akin to 'but for' causation in tort."  *Finkelman v. National Football League*, 810 F.3d 187, 193 (3d Cir. 2016) (internal quotations and citations omitted).  Here, there is no causal connection between the claimed injuries and the challenged rules because the denial of Plaintiff's admission to the Delaware Bar was based on moral character grounds.  SAC ¶¶ 109, 140.  Indeed, Plaintiff admits he "has not always been an upstanding citizen," "has a youthful record which is quite checkered in nature," and "at no time places into controversy his initial denial for admission to the Delaware Bar on the grounds of moral character." *Id.* ¶ 70.  Plaintiff further admits that he complied with the each of the challenged the rules in the process of applying to the Delaware Bar.  *Id.* ¶ 104.  Plaintiff cannot demonstrate that either the denial of admission, or the review process leading to that denial, are injuries fairly traceable to the Clerkship, Checklist, or Preceptor Requirements, when Plaintiff fulfilled those prerequisites prior to the denial and was ostensibly unfit for admission on other grounds— "reasonable concerns" about his moral character.  *Id.* ¶ 109; *see, e.g.*, *Howard v. N.J. Dep't of Civil Service*, 667 F.2d 1099, 1101–02 (3d Cir. 1981) (finding "no causal connection" between challenged conduct and injury for standing purposes where the plaintiffs challenged the Newark police department's "physical agility test" as discriminatory, but "because they failed the written examination . . . the challenged physical agility test did not cause plaintiffs' loss of job opportunity").

For similar reasons, Plaintiff cannot establish redressability, which "requires the plaintiff to

show that it is 'likely, as opposed to merely speculative,' that the alleged injury will be redressed by a favorable decision." *Finkelman*, 810 F.3d at 194 (quoting *Lujan*, 504 U.S. at 561). A hypothetical ruling in favor of Plaintiff in this action would declare the Clerkship, Checklist, and Preceptor Requirements unconstitutional and enjoin their enforcement. SAC ¶¶ 215–21. But, given the fact that Plaintiff was denied admission to the Delaware Bar due to moral character deficiencies, "he could not benefit from a ruling that the challenged admission practices are unconstitutional." *See Doherty v. Rutgers School of Law-Newark*, 651 F.2d 893, 889 (3d Cir. 1981) (no standing to challenge law school's affirmative action program where the plaintiff "would not otherwise have been admitted"). Because Plaintiff cannot demonstrate his alleged injuries were caused by the challenged rules and because a decision in Plaintiff's favor would not redress his alleged injuries, Plaintiff lacks standing.

In an attempt to circumvent this conclusion, Plaintiff appears to assert that he is threatened with a future harm due to the challenged rules, as Plaintiff alleges that he "has immediate plans to reapply for the Delaware Bar." SAC ¶ 140. Specifically, Plaintiff argues that he has standing to challenge the Delaware Bar admission rules based on recent cases in which the Third Circuit affirmed that individual members of the National Association for the Advancement Multijurisdictional Practice ("NAAJMP") had standing to challenge certain bar admission rules of other states. *See National Ass'n for the Advancement of Multijurisdictional Practice (NAAMJP) v. Simandle*, 658 F. App'x 127 (3d Cir. 2016); *National Ass'n for the Advancement of Multijurisdictional Practice (NAAMJP) v. Castille*, 799 F.3d 216 (3d Cir. 2015). However, Plaintiff's standing argument finds little support in the case law, as none of the cases that Plaintiff relies upon concerns challenges to bar admission rules with which the aggrieved applicants complied or demonstrated an unequivocal ability to comply. Additionally, as a more fundamental matter, Plaintiff does not point to any authority, in his Second Amended Complaint or otherwise, indicating that his re-application to the

16

Delaware Bar must include a full repetition of the challenged prerequisites with which he previously complied.[5]

In *Simandle*, two attorneys, who were "admitted to practice in the state and federal courts of New York," challenged Local Civil Rule 101.1 of the United States District Court for the District of New Jersey, which governs admission to the bar of that court and provides that "[a]ny attorney licensed to practice by the Supreme Court of New Jersey may be admitted." 658 F. App'x at 131. The Third Circuit affirmed the attorneys' standing to challenge the rule prior to applying for admission because they were "already engaged in the legal profession, admitted to the bar of a neighboring state, and would apply to the District Court bar if the rules were changed to permit their admission." *Id.* at 133. Furthermore, because the attorneys were not licensed to practice by the Supreme Court of New Jersey, "denial of their application was assured" and the relevant "rules inflict[ed] the alleged injury regardless of whether [the attorneys] actually undertook the futile application process" to the District of New Jersey. *Id.* Here, Plaintiff asserts standing to challenge the constitutionality of the Clerkship, Checklist, and Preceptor Requirements with respect to a second, forthcoming application to the Delaware Bar. SAC ¶ 140. But, unlike in *Simandle* where the attorneys demonstrated that the challenged rule plainly prevented their admission to the District

---

[5] Although Plaintiff appears to assume that he will be required to complete the Clerkship, Checklist, and Preceptor Requirements for a second time, Plaintiff does not point to any dispositive authority to that effect. Delaware Supreme Court Rule 52(c) provides that an applicant may be required to retake the Bar Exam if he fails to satisfy the requirements for admission to the Bar prior to "December 31 of the calendar year following the year in which the applicant passes the Bar Examination." Del. Sup. Ct. R. 52(c). However, under this Court's reading, the Delaware Supreme Court Rules do not require a repeat applicant to necessarily redo each admission requirement upon re-application. For example, a repeat applicant need not graduate from law school a second time in order to re-apply after an admission denial. Plaintiff's Second Amended Complaint is notably deficient in this respect and may warrant further amendment should there be authority to the contrary. That said, it is not clear any such allegations would materially affect this Court's standing analysis because, as discussed *infra*, Plaintiff's moral character likely remains grounds for denial of any application to the Delaware Bar in the immediate future.

of New Jersey, Plaintiff cannot show, nor does he allege, that noncompliance with the Clerkship, Checklist, and Preceptor Requirements would necessarily serve as grounds for any future denial of admission to the Delaware Bar, particularly given that the DBBE recently denied Plaintiff admission based on deficient moral character.

Similar inapposite circumstances gave rise to the dispute in *Castille*.  In *Castille*, two attorneys admitted to practice law in other states, challenged the constitutionality of Pennsylvania Bar Admissions Rule 204, which "allows an attorney to join the Pennsylvania bar by motion, without taking the Pennsylvania bar exam, if the attorney has graduated from an accredited law school, [and] has either passed the bar exam or practiced law for the major portion of five of the preceding seven years in a reciprocal state," subject to certain additional requirements.  799 F.3d at 218.  The two attorneys either did not practice in a reciprocal state or had not practiced for the requisite amount of time in a reciprocal state.  *Id.*  The attorneys had standing to challenge the rule because "Rule 204 as it currently operates would deny [the attorneys] admission to the Pennsylvania bar if they applied." *NAAMJP v. Castille*, 66 F. Supp. 3d 633, 641 (E.D. Pa. 2014), *aff'd*, 799 F.3d 216 (3d. Cir. 2015). Here, Plaintiff cannot demonstrate that the Clerkship, Checklist, and Preceptor Requirements would operate to deny him entry to the Delaware Bar if he applied a second time.  As emphasized *supra*, the true barrier to Plaintiff's admission to the Delaware Bar is not the challenged requirements, but the moral fitness grounds that justified his initial denial.

In contesting requirements that Plaintiff previously satisfied and that did not prevent his admission to the Delaware Bar, Plaintiff fails to demonstrate the essential elements of causation and redressability necessary to establish Article III standing.  Moreover, Plaintiff's attempt to structure his claims in accordance with those brought in other contexts by the NAAMJP provides no safe harbor for standing purposes.  Indeed, Plaintiff's allegations offer no indication that future "denial of [his] application [is] assured" due to the challenged rules.  *Cf. Simandle*, 658 F. App'x at 133.

Because Plaintiff lacks standing to contest the constitutionality of Del. Sup. Ct. R. 52(a)(2), Del. Sup. Ct. R. 52(a)(8), Del. Sup. Ct. R. 52(a)(9), and Del. BR. 10, Plaintiff's claims against the State Defendants must be dismissed.[6]  In so finding, this Court makes no determination as to the merits of Plaintiff's constitutional challenges to the relevant rules.

### 2.   *Claims Against the Federal Defendants*

Plaintiff's claims against the Federal Defendants challenge the constitutionality of D. Del. LR 83.5(b), which governs admission to the District of Delaware, to the extent that it adopts Del. Sup. Ct. R. 52(a)(2), Del. Sup. Ct. R. 52(a)(8), Del. Sup. Ct. R. 52(a)(9), and Del. BR. 10 "in their entirety" by requiring admission to the Delaware Bar.  SAC ¶ 223.  Because Plaintiff lacks standing to challenge those rules, Plaintiff also lacks standing to contest D. Del. LR 83.5(b) in its adoption of those rules.  Indeed, the injury Plaintiff alleges stems directly from issues with his moral character— not the challenged rules of the Delaware Supreme Court and DBBE or, as a corollary, the District of Delaware's adoption of those rules via D. Del. LR 83.5(b).  Further, Plaintiff cannot show that any harm flowing from D. Del. LR 83.5(b)'s adoption of the Delaware Supreme Court's Rules would be redressable by a decision of this Court, as he likely still would not qualify for admission to the District of Delaware for the same reason he did not qualify for admission to the Delaware Bar—moral character.

---

[6] While Plaintiff lacks standing to pursue his present claims against the State Defendants, it bears noting that an applicant to the Delaware Bar, under the proper circumstances, would have standing to challenge the constitutionality of certain admission requirements.  For instance, the facts of both *Simandle* and *Castille* provide a non-exhaustive sampling of such circumstances.

Additionally, it is also noteworthy that Plaintiff does not seek monetary damages for the expenses he incurred in applying to the Delaware Bar, limiting the remedy he seeks with respect to the admission requirements to declaratory and injunctive relief.  In fact, Plaintiff alleges that "[n]o amount of money damages could adequately compensate Plaintiff for the irreparable harm" he has purportedly suffered.  SAC ¶ 217.  As such, this Court's standing analysis does not address claims expressly disclaimed by Plaintiff or consider remedies beyond the relief sought by Plaintiff.

Nor does Plaintiff allege sufficient facts to demonstrate standing to challenge D. Del. LR 83.5(b) under the Third Circuit case law discussed *supra*. The two attorneys in *Simandle*, who challenged the District of New Jersey's rule providing "[a]ny attorney licensed to practice by the Supreme Court of New Jersey may be admitted" to the bar of the District of New Jersey, were both "already engaged in the legal profession, admitted to the bar of a neighboring state, and would apply to the District Court bar if the rules were changed to permit their admission." 658 F. App'x at 131, 133. Here, Plaintiff seeks to challenge the District of Delaware's virtually identical rule. However, unlike the attorneys in *Simandle*, Plaintiff cannot demonstrate he is engaged in the legal profession or admitted to the bar of any state, let alone that a favorable decision from this Court would result in his admission to the District of Delaware. Like Plaintiff's claims against the State Defendants, Plaintiff's claims against the Federal Defendants contesting D. Del. LR 83.5(b) are dismissed for lack of standing.[7]

## III.   CONCLUSION

For the reasons set forth above, Defendants' motions to dismiss are **GRANTED**. As a result, several pending motions filed by Plaintiff are now moot, including: Plaintiff's Motion for a Temporary Restraining Order and Preliminary Injunction (ECF No. 3), Plaintiff's Motion to Rule on Previous Motions (ECF No. 14), Plaintiff's Motion under D. Del. LR 83.5 (ECF No. 16), and

---

[7] Without addressing the merits of Plaintiff's constitutional challenges to D. Del. LR 83.5(b), the Court acknowledges the Third Circuit's opinion in *Simandle*, which squarely rejects constitutional challenges to the District of New Jersey's rule requiring admission to the New Jersey Bar. 658 F. App'x at 138–39. There, the Third Circuit stated, in no uncertain terms, that "federal courts have uniformly rejected challenges to the requirement that admission to practice before individual federal district courts be limited to attorneys admitted to the bar of the forum state." *Id.* (internal quotations and citation omitted). Further, as a general matter, "[a] federal court has the power to control admission to its bar." *Id.* at 138 (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991)). Thus, with admission to the Delaware Bar as a prerequisite, the District of Delaware's "local rules for attorney admission are neither unique nor particularly restrictive." *Id.*

Plaintiff's Motion to Expedite Oral Argument regarding his D. Del. LR 83.5 motion (ECF No. 17).[8]

An appropriate Order shall follow.

Date: November 10, 2022                                    /s/ Freda L. Wolfson
                                                          Hon. Freda L. Wolfson
                                                          U.S. Chief District Judge

---

[8] In addition, Plaintiff's Motion for Designation of a District Judge from Another District Court (ECF No. 7) has been rendered moot by the designation and assignment of this Court for the disposition of this matter. *See* ECF No. 31.